IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

MAURICE E. MEYER, III,       )     Civil Action No. 3:08-3828-JFA-JRM
                                  )
         Plaintiff,      )
                                  )
          v.           )    **REPORT AND RECOMMENDATION**
                                  )
MICHAEL J. ASTRUE,        )
COMMISSIONER OF SOCIAL SECURITY  )
ADMINISTRATION,         )
                                  )
        Defendant.     )
_____ )

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning

the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42

U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security

(the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed an application for DIB on July 13, 2005, with an alleged onset of

disability of December 11, 2004. Plaintiff's application was denied initially and on reconsideration,

and he requested a hearing before an administrative law judge (the "ALJ"). Plaintiff appeared and

testified at a hearing held on April 10, 2008. On June 5, 2008, the ALJ issued a decision finding

Plaintiff was not disabled because, with his residual functional capacity to perform light work and

under the guidelines promulgated by the Commissioner, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  <u>See generally</u> 20 C.F.R. Part 404, Subpt. P, App. 2.

Plaintiff was fifty-four years old at the time of the ALJ's decision.  He has an eleventh grade education with past relevant work as a marine machinist and as the owner/manager of a feed store. (Tr. 55, 98, 130). Plaintiff alleged disability due to back and upper extremity injuries.  (Tr. 55, 91).

The ALJ found (Tr. 13-18):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since December 11, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease and a history of left wrist injury (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 22, 1953 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2004 through the date of this decision (20 CFR 404.1520(g)).

On October 24, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 3). Plaintiff then filed this action on November 20, 2008.

## SCOPE OF REVIEW

The Social Security Act (the "Act") provides that, for "eligible"[1] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. Id.

---

[1]Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

The scope of judicial review by the federal courts in disability cases is narrowly tailored. Thus, the only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (citing <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

In his brief before the court, Plaintiff first alleges that the Appeals Council erred in its treatment of "new" evidence. Plaintiff further complains that the ALJ erred in failing to: (1) give controlling weight to his "treating" physician's opinion; (2) properly weigh his consultant's opinion; (3) find that he was unable to engage in substantial gainful activity ("SGA"); (4) find that his

4

depression was "severe"; and (5) obtain vocational expertise. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

### A. "New" Evidence

Plaintiff complains that the Appeals Council failed to make specific findings as to the medical source opinion provided by his surgeon, Dr. Byron Bailey. Dr. Bailey's letter (Tr. 559), expressing his opinion as to Plaintiff's residual functional capacity ("RFC"), was not before the ALJ but, rather, was submitted to the Appeals Council after the ALJ's decision. (See Tr. 3-6). The Appeals Council incorporated Dr. Bailey's letter into the record (see Tr. 6), but in deciding not to review the ALJ's decision, found only that "the additional evidence" failed to "provide a basis for changing the [ALJ]'s decision" (Tr. 3).

In unpublished cases, the Fourth Circuit Court of Appeals has found that the Appeals Council need not give detailed reasons for finding that new evidence does not provide a basis for changing the ALJ's decision. See Freeman v. Halter, 15 Fed. Appx. 87, 2001 WL 847978 at *2 (4th Cir. July 27, 2001); Hollar v. Comm'r of the Soc. Sec. Admin., 194 F.3d 1304, 1999 WL 753999 at *1 (4th Cir. Sept. 23, 1999); see also Jackson v. Barnhart, 368 F. Supp. 2d 504, 508, n.2 (D.S.C. 2000) ("[T]here is no requirement that the Appeals Council 'articulate its own assessment of the additional evidence' in its decision to deny review."). But there is a split among South Carolina district courts as to whether the Appeals Council must make an assessment of additional evidence in its decision to deny review. Compare Jackson, supra, with Harmon v. Apfel, 103 F. Supp. 2d 869, 873 (D.S.C. 2000) ("[T]he Appeals Council must articulate its reason for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new

evidence."). See also Suber v. Commissioner of Soc. Sec. Admin., 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (agreeing with Harmon).]

Such controversy is of no moment here.  If a party objects to the ALJ's decision, he may request review by the Appeals Council.  See 20 C.F.R. § 404.967.  The Appeals Council's review is limited to evidence already in the record unless the claimant submits "new and material evidence" which "relates to the period on or before the date of the [ALJ's] decision."  Id. § 404.970(b).  In the Fourth Circuit, evidence is only "new" for these purposes "if it is not duplicative or cumulative." Wilkins v. Secretary Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). And it is "material" only "if there is a reasonable possibility that the new evidence would have changed the outcome."  Id.

Dr. Bailey's letter appears to fail on both counts.[2]  Plaintiff even cites to Dr. Bailey's statement that he is "in agreement with the majority" of the findings of Dr. Barry Weissglass, who conducted an independent evaluation of Plaintiff, at Plaintiff's request.  Dr. Weissglass's report was before the ALJ, who discussed it extensively.  (Tr. 16).  Thus, Dr. Bailey's letter was both duplicative *and* cumulative.

Further, there is no showing that Dr. Bailey's letter would have changed the ALJ's decision. The ALJ accorded Dr. Weissglass's opinion – with which Dr. Bailey essentially agreed – "only minimal evidentiary weight" because it was "inconsistent with the other evidence of record."  (Id.)

_____

[2]"Whether the evidence is new, material and related to the relevant period is a question of law reviewed de novo."  Box v. Shalala, 52 F.3d 168, 171-72 (8th Cir. 1995).  See also Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003) (same).  Cf. Parris v. Heckler, 733 F.2d 324, 325 (4th Cir. 1984) (finding that, if the Appeals Council "applied an improper standard of review in reversing the ALJ's decision...it would be an error of law").

Accordingly, there is no reason for any subsequent reviewer to believe that the ALJ would have accorded a similar opinion additional, much less great, weight.

Plaintiff argues that the ALJ's decision "was strongly influenced by the fact that none of the *treating physicians* had expressed the opinion that [Plaintiff] was disabled." Pl.'s Br. at 9. Yet this argument does not aid Plaintiff because the record fails to establish Dr. Bailey as a "treating physician." Great weight is attributed to the opinion of a treating physician because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Although Plaintiff's relationship with Dr. Bailey dates back to his December 2004 back surgery (see Tr. 371), the record shows that Plaintiff saw Dr. Bailey only once more, two months thereafter (see Tr. 379). In fact, Plaintiff's neurosurgery records indicate that a nurse practitioner, Maggie Kelley, was his primary caregiver for post-operative care. (See Tr. 221, 274, 376-77, 379, 383).

Moreover, Plaintiff's last medical record from the Neurosurgery Spine Clinic is dated April 24, 2006 (see Tr. 274), well over two years before Dr. Bailey's September 19, 2008 letter. The ALJ may discount a physician's opinion when made well after the physician's last treatment. See Mastro v. Apfel, 270 F.3d at 178 (one year delay); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (ALJ not required to give substantial weight to treating physician's report when prepared three years after last visit); 20 C.F.R. § 404.1527(d)(2)(i) (listing "frequency of examination" as a factor to be considered in weighing a medical opinion). There is not even any evidence that Dr. Bailey *reviewed* Plaintiff's neurosurgical records from his post-operative care, much less records dating from April 2006 through the ALJ's decision. Hence, the undersigned finds no reversible error in the Appeals Council's failure to explain its treatment of Dr. Bailey's letter. See, e.g., Mickles v.

<u>Shalala</u>, 29 F.3d 918, 921 (4th Cir.1994)(affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"); <u>Senne v. Apfel</u>, 198 F.3d 1065, 1067 (8th Cir. 1999) (the court will not set aside an administrative finding based on an "arguable deficiency in opinion-writing technique" when it is unlikely to have affected the outcome).

### B. Treating Physician's Opinion

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight but may be disregarded if persuasive contradictory evidence exists to rebut it. <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006); <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>see also</u> 20 C.F.R. § 404.1527(d)(2). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 (4th Cir. 2005) (quoting <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (footnote omitted)). An ALJ, therefore, must explain his reasons for disregarding the opinion of a treating physician. <u>E.g.</u>, <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (noting the ALJ must provide specific and legitimate reasons for disregarding treating physician's opinion); <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 720 (8th Cir. 2001) ("Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting."); <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999) (The ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); <u>see also</u> <u>DeLoatche v. Heckler,</u> 715 F.2d 148, 150-51 (4th Cir. 1983) (discussing the ALJ's general duty of explanation).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that, if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Plaintiff contends that, in accordance with these principles, Dr. Bailey's opinion should be accorded controlling weight. However, even if it were proper to consider Dr. Bailey's letter, as discussed hereinabove, he should not be considered to be a "treating" physician. Further, even if he is a treating physician, the giving of such an opinion almost two and one-half years after the last-documented date of neurosurgical treatment would certainly diminish its value.

In addition, Dr. Bailey's opinion is inconsistent with the records from his own department as of the date Plaintiff last sought neurosurgical follow-up. See Craig, 76 F.3d at 589. On April 24, 2006,[3] Plaintiff complained of right low back pain, but it had been present for only the "past few weeks." (Tr. 274). He ambulated without weakness and got onto and off of the examination table without assistance. Plaintiff exhibited full strength in all extremities, his deep tendon reflexes were symmetric, and his sensory exam was intact to light touch. About a month later, Plaintiff went on an all-weekend camping trip, during which he took only one Lortab (containing an opioid analgesic, is indicated for the relief of moderate to moderately severe pain). (Tr. 230). The next weekend, Plaintiff "fished in [a tournament]." (Tr. 229).

---

[3]Plaintiff's most recent back-related caregiver visit before this date was a scheduled follow-up some five months earlier, with the nurse practitioner. (See Tr. 221).

Soon thereafter, it was noted that Plaintiff's improvement with physical therapy had plateaued (see Tr. 225), and he began treatment at a pain management clinic (see Tr. 160). Plaintiff admitted that he had "been doing very well with physical therapy" until just three months previous, but had started having low back pain which, *"during physical therapy sessions"* was most severe, ranging from a two to a ten on a ten-point scale. (Id. (emphasis added)). The pain, however, was "almost relieved by rest." (Id.) After receiving injections, Plaintiff experienced "immediate relief of all pain symptoms" which lasted about two months. (Tr. 218). Plaintiff reported that his pain limited him only "a little bit with daily activity." (Id.). He had no motor or sensory deficits in his lower extremities and had a non-antalgic gait. Additional injections reduced his pain to only a two-to-three, "where it had been significantly worse." (Tr. 216). Overall, Plaintiff has failed to establish that Dr. Bailey's opinion is worthy of any more weight that the ALJ afforded to that of Dr. Weissglass.

## C.  Non-Treating Physician's Opinion

Plaintiff next complains about the ALJ's assessment of Dr. Weissglass's report, which opined that Plaintiff, inter alia, would (i) only be able to stand and/or walk, or sit, for less than two hours in an eight-hour day; (ii) "have significant limitation in the ability to concentrate, remain alert, think clear, or otherwise attend to work tasks to completion during an 8-hour workday"; (iii) suffer significant limitation in concentration and attention to tasks for fifty percent or more of the workday or workweek; (iv) be absent from work four or more days per month; (v) not be able to lift over ten pounds; and (vi) have *no* "ability to sustain any type of work activity at any exertional level." (Tr. 196-200). He concluded that "[n]o reasonable accommodation would be available to allow [Plaintiff] to perform a reasonably remunerative job." (Tr. 193).

As discussed above, the ALJ reviewed Dr. Weissglass's report at length, but the ALJ determined that the doctor's opinion was "inconsistent with the other evidence of record" and, thus, due only "minimal evidentiary weight." (Tr. 16). The ALJ explained:

> Indeed, even [Dr. Weissglass's] own physical examination of the claimant proved to be unremarkable with the exception of significant decreased left hand grip, decreased extension of the left wrist and decreased range of motion of the back. Moreover, despite his report that the claimant had a significantly antalgic gait and difficulty getting on and off the exam table, the physician noted no clubbing, cyanosis, or edema to the claimant's extremities; no spasm to his back; and retained suppleness and full range of motion of his neck.

(Id. (citing Tr. 187-200)). Plaintiff remarks that the ALJ is "unqualified to assess the medical significance of these findings and improperly substituted his lay opinion for that of a medical expert." Pl.'s Br. at 15. See, e.g., Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence.").

Plaintiff may indeed be correct as to the ALJ's citation to "medical" findings of clubbing, cyanosis, edema and spasm, which arguably require some measure of medical knowledge to "interpret." However, the ALJ is well within his role as a factfinder, as outlined in established law, in noting the lack of objective findings in support of Dr. Weissglass's opinion. See, e.g., 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, *particularly medical signs and laboratory findings*, the more weight we will give that opinion." (emphasis added)). Further, as is evident from the above-quoted passage, the ALJ relied on much more than this single observation to support his assessment of the doctor's opinion.

Plaintiff next contends that Dr. Weissglass's opinion was "fully consistent" with the report of Dr. Daniel Bates, who conducted Plaintiff's consultative examination. Pl.'s Br. at 15. In assessing

Plaintiff's RFC, the ALJ relied, in part, on Dr. Bates' findings. (See Tr. 17 (citing Tr. 356-57)). The fallacy of this argument is demonstrated below:

| | Dr. Bates | Dr. Weissglass |
|---|---|---|
| Antalgia of gait | mild | significant |
| Straight leg raise | negative | negative ("No pain") |
| Right upper extremity | 5/5 muscle strength | [no findings] |
| Left upper extremity | 4/5, no tenderness to palpation, full range of motion, grip normal | tender to palpation, significantly decreased grip |
| Left lower extremity | 4/5, full range of motion | [no findings] |
| Right lower extremity | 5/5, full range of motion | [no findings] |
| Lumbar spine, range of motion | restricted | markedly decreased |

Plaintiff is correct, however, that Dr. Bates found that Plaintiff's "[m]ovement is severely restricted," with minimal range of motion on flexion. (Tr. 356) Yet, shortly after Dr. Bates' exam, a state medical consultant opined that Plaintiff would be able to perform light work (Tr. 347), and the ALJ must consider and evaluate such an opinion as that of a "highly qualified physician[]" who is an "expert[] in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 61 Fed. Reg. 34466-01, 34467.

Plaintiff also makes reference to Dr. Bates' diagnoses of gait abnormality, closed fracture of lumbar spine with spinal cord injury, and back pain (Tr. 357); indeed, these are evident from Plaintiff's medical records. The ALJ, however, pointed to records which indicate Plaintiff's gait was normal; a March 2006 MRI which showed only mild degenerative disc disease, with some clumping of nerve roots at two levels; and other records which establish Plaintiff's improvement from his

December 2004 injuries and surgeries, and significantly contradict Dr. Weissglass's opinion. (Tr. 17).    Plaintiff takes issue with the ALJ's citation of a "Discharge Summary" completed by his physical therapist, claiming that it is not "substantial evidence."  Pl.'s Br. at 16.  Plaintiff is mistaken; that a medical record was recorded by a caregiver who is not an "acceptable medical source"[4] does not mean that it cannot provide substantial evidence to support the factfinder's decision. The regulations provide that only an "acceptable medical source" can render a "medical opinion" or be a "treating source."  See 20 C.F.R. §§ 404.1527(a)(2), 404.1502.  Additionally, the "medical report" of an "acceptable medical source" is needed to establish whether a claimant has a "medically determinable impairment(s)."  20 C.F.R. § 404.1513(a), (b).  The regulations also provide for the use of "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."  Id. § 404.1513(d).

Therapists are included in the examples of other medical sources.  See id. § 404.1513(d)(1). The Commissioner has recognized that "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 71 Fed. Reg. 45593-03, 45594. Not only is such evidence *not* "not substantial evidence," but rather, deemed "*important* and *should be* evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."[5]  Id. (emphases added).  As with his other citations to Plaintiff's

---

[4]See 20 C.F.R. 404.1513(a).

[5]Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source.*"  SSR 06-03p, 71 Fed. Reg. 45593-03, 45594

medical records, the ALJ could reasonably rely on the therapist's observations that Plaintiff "was independent with respect to his activities of independent living; had no work/recreations limitations; and could ambulate independently." (Tr. 16 -citing Tr. 224).

Indeed, at Plaintiff's initial evaluation in January 2005, he was walking with a rolling walker and wearing a back brace. (See Tr. 514). He could walk only fifty feet, with his walker, and his lower extremity strength was only three and a half out of five. By February 3, 2005, Plaintiff was not using his walker, had better mobility, and was "excited about his rate of improvement." (Tr. 512). One month later, Plaintiff progressed to use of an elliptical trainer a few days each week. (See Tr. 489-500). By the end of March, the elliptical trainer was a part of every session. (See Tr. 477-488). Plaintiff added treadmill work to his therapy routine by the end of April 2005. (See Tr. 473). By May 6, 2005, Plaintiff could tolerate thirty minutes of aerobic exercise. (Tr. 467).

In the spring of 2005, Plaintiff underwent procedures on both his left shoulder and left wrist, and for a while, his physical therapy was diverted. By August 8, 2005, Plaintiff's orthopedic doctors had released him from care (see Tr. 551, 552; see also Tr. 412), and by the end of the month, Plaintiff was making good progress towards his long-term goals and improving his lower back strength and function. (Tr. 404-405). He even experienced several consecutive days without any low back pain. (See Tr. 402).

There appears to be no records of Plaintiff's attending physical therapy in October and November 2005. After that time, however, the elliptical trainer, then the treadmill, were slowly worked back into his routine. (See Tr. 321-35). By January 13, 2006, Plaintiff was exercising for ten minutes on the treadmill and for fifteen minutes on the elliptical trainer, at each session, five sessions per week, through his discharge in mid-June 2006. (See Tr. 225-56; 293-321). Near the end

of March, Plaintiff remarked that he "[f]elt great over the weekend, nice not to hurt" (Tr. 250), and occasionally thereafter reported pain-free periods (see Tr. 242, 244).

Plaintiff argues that the ALJ "put a great deal of stock" in different observations of his gait. Pl.'s Br. at 16. Yet the undersigned finds only two mentions of Plaintiff's gait. In discounting Dr. Weissglass's opinion, the ALJ mentioned, among many other findings, that the doctor found Plaintiff's gait to be significantly antalgic, while in August 2006, another doctor found Plaintiff's gait to be non-antalgic. (Tr. 16 -citing Tr. 218). In the second instance, in support of his RFC finding, the ALJ noted the August 2006 observation, together with Dr. Bates' finding that Plaintiff's gait was only mildly antalgic. (Tr. 17). Although Plaintiff may explain, after the fact, that his symptoms varied, the fact remains that only Dr. Weissglass made the "significantly antalgic" observation and, accordingly, his report was inconsistent with the others in the record. (See, e.g., Tr. 162 (cautious, but normal); 218 (non-antalgic); 356 (mildly antalgic); 513 (normal); 521 (normal); 525 (normal)). Consistency with the record as a whole is one of the factors to be considered in weighing a medical opinion. See 20 C.F.R. § 404.1527(d)(4).

Plaintiff contests the ALJ's observation that his reported activities were inconsistent with Dr. Weissglass's opinion, referring to his testimony which explained away notations on riding horses and driving a tractor. Of course, Plaintiff might easily be able to provide explanations for such activities, and also as to his boating activities (see Tr. 445, 6/05; Tr. 335, 12/05); yardwork (Tr. 299, 3/06; Tr. 240, 4/06); sanding drywall (Tr. 240, 4/06); camping (Tr. 230, 5/06, "all weekend"); fishing (Tr. 229, 6/06, "in tourney"). What remains is Plaintiff's reports that he needed minimal pain medication (see, e.g., Tr. 212, 214, 222, 230, 300, 575), told the pain specialist that his pain limited him just "a little bit with daily activity" (Tr. 218), and, after discontinuing physical therapy, was

helped significantly at the pain management clinic (see, e.g., Tr. 212, 214, 216).  "[I]t is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence," Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and the record contains substantial evidence to support the ALJ's resolution.[6]

### D.    SGA

Plaintiff argues that "the record clearly shows that frequency of medical treatment alone would have precluded" Plaintiff's engaging in SGA for eighteen months after his alleged onset of disability.  Pl.'s Br. at 17.  Plaintiff explains that his "numerous medical procedures," many doctors' appointments, and "171 different sessions of physical therapy" would have resulted in a "degree of absenteeism from work that . . . would not be tolerated by any employer."  Id.

Plaintiff, however, has failed to establish how these instances would have prevented SGA which is *not* defined in terms of hours worked per week.  To the contrary, the regulatory definition is quite open:  "[SGA] means work that – (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  The regulations even provide that "[y]our work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Id. § 404.1572(a).  Accordingly, the undersigned finds Plaintiff's argument to be ill-founded.

### E.    Severity

Plaintiff objects to the ALJ finding that his depression was not "severe."  It is the claimant's burden to prove that he or she suffers from a medically severe impairment.  Bowen v.

---

[6]Plaintiff avers that the Discharge Summary had no explanation of its findings, specifically that he had no work or recreational restrictions.  To the extent explanation was needed, the notes of Plaintiff's reported activities in the therapy records provide it.

Yuckert, 482 U.S. 137, 145 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. § 404.1521(a). Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

Id. § 404.1521(b).

A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" Id. § 404.1508. A claimant's own description of her physical or mental impairment is not enough to establish that there is, in fact, a physical or mental impairment. Id. § 404.1528(a).

In assessing Plaintiff's mental health, the ALJ explained:

> Regarding Dr. Weisglass' [sic] report that the claimant had a mental disorder as well as the claimant's testimony that he suffered from depression, the record does not establish that the claimant received any formal mental health treatment or required psychiatric hospitalization at any time relevant to this decision. Also, the record does not reveal that any of the claimant's treating physicians have treated him for/diagnosed him with any mental disorder.

(Tr. 13).  Plaintiff argues that his pain management specialist noted that Plaintiff "report[ed] significant depression."  (Tr. 162).  The Court in <u>Craig</u> addressed a similar contention:

> Craig argues that the fact that Keller observed Craig (when she complained about the pain) transforms his observations into "clinical evidence."  If this were true, it would completely vitiate any notion of objective clinical medical evidence.  There is nothing objective about a doctor saying, without more, "I observed my patient telling me she was in pain."

<u>Craig</u>, 76 F.3d at 590 n.2.  Likewise, Plaintiff's complaint to his physician provides no support, on its own, for his severity argument.  None of the other several records from the pain management clinic – dating back over thirteen months – contains a mention of depression or any mental symptom. (<u>See</u> Tr. 160-62; 212-20).

Plaintiff next attempts to rely on Dr. Weissglass's "assessment" that Plaintiff suffered from mood changes "with dramatic impairment to interpersonal relationships as well as general enjoyment of life."  (Tr. 192).  In discounting this portion of the doctor's report, the ALJ explained its inconsistency, noting that "the record reveals no mental health treatment and no complaints voiced to any treating source as to mental health issues."  (Tr. 16).  Thus, the ALJ did not err in his decision because Dr. Weissglass's opinion was "based primarily on [Plaintiff]'s subjective complaints and not the evidence of record."  (<u>Id.</u>)  <u>See</u> <u>Craig</u>, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

### F.      Non-Exertional Impairments

Plaintiff contends that the ALJ erred because he failed to obtain the testimony of a vocational expert at Plaintiff's hearing but, instead, relied on the "grids" to determine that he was not disabled.  At step five of the sequential evaluation, the Commissioner bears the burden of providing

evidence of a significant number of jobs in the national economy that a claimant could perform.

Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  To improve both the uniformity and efficiency

of this determination, the Commissioner promulgated the Medical-Vocational Guidelines (the

"grids"),[7] located at 20 C.F.R. Part 404, Subpart P, Appendix 2.  Heckler v. Campbell, 461 U.S. 458,

461 (1983).  Each grid, however,

> considers only the strength or exertional component of a claimant's disability in
> determining whether jobs exist that the claimant is able to perform in spite of his
> disability.  Thus, in cases where pain occurs only upon exertion and limits one's
> strength functioning, the grid tables will apply.  But when a claimant suffers from
> both exertional and nonexertional limitations, the grid tables are not conclusive but
> may only serve as guidelines.

Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir.

1984)); see also 20 C.F.R. § 404.1569a(d).  When the Commissioner is unable to rely on the grids,

he must prove through vocational expertise that jobs exist in the national economy which the

claimant can perform.  Walker, 889 F.2d at 49-50.

Plaintiff asserts that he suffers from significant non-exertional impairments, including

postural, manipulative, and mental.  To the extent that Plaintiff relies on the opinions of Drs. Bailey

and Weissglass to support his contentions, the undersigned has found substantial support for the

---

[7]The grids:
consist of a matrix of the four factors identified by Congress – physical ability, age,
education, and work experience – and set forth rules that identify whether jobs
requiring specific combinations of these factors exist in significant numbers in the
national economy.  Where a claimant's qualifications correspond to the job
requirements identified by a rule, the guidelines direct a conclusion as to whether
work exists that the claimant could perform.  If such work exists, the claimant is not
considered disabled.
Heckler v. Campbell, 461 U.S. 458, 461-62 (1983) (footnotes omitted).

ALJ's discounting of their opinions and, thus, they cannot be relied upon. Accordingly, Plaintiff has established no significant mental impairment of any kind.

Two state medical consultants reviewed Plaintiff's records and submitted Physical Residual Functional Capacity Assessments ("PRFCAs"). The first, completed in December 2005, recommended that Plaintiff "avoid constant overhead reaching" with his left upper extremity. (Tr. 349). The second PRFCA, submitted six months later and finding no upper extremity limitations, specifically referred to Plaintiff's last examination in the Neurosurgery Spine Clinic in April 2006. (See Tr. 175). During that visit, Plaintiff's upper extremity strength was found to be five- of-five, he had symmetric deep tendon reflexes, and his sensation was intact to light touch. (Tr. 274). Further, when Plaintiff's orthopedic surgeon released him, Plaintiff had "minimal discomfort." (Tr. 552). He told his physical therapists that the doctor was "satisfied" with his shoulder progress and he no longer needed their assistance with his rehabilitation. (Tr. 412).

The ALJ, in explaining his RFC finding, accounted for Plaintiff's "history of left wrist injury" by limiting him to the performance of light work, as suggested by the consultants. (Tr. 17). The ALJ referred both to the April 2006 findings and also to Dr. Bates' report that rated Plaintiff's upper extremity strength at four-of-five on the left, and five-of-five on the right. (Tr. 17). Thus, the undersigned finds that the ALJ did not err in finding Plaintiff to have no upper extremity non-exertional impairments.

The ALJ acknowledged that both consultants recommended postural limitations, but he expressly did not adopt these. (Tr. 16). The first PRFCA noted that Plaintiff could stand and walk without assistance; used a back brace; had only mild degenerative joint disease; and complained of only mild discomfort. (Tr. 347). The second PRFCA noted that Plaintiff had a good fusion with no

complications, ambulated without weakness, had symmetric deep tendon reflexes, and had sensation intact to light touch. (Tr. 175).

The ALJ, however, had the benefit of even later records, including the June 2006 physical therapy discharge summary and the August 2006 record from the pain management clinic. Although the undersigned might have found otherwise, it is well-established that "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) precludes a de novo judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) (internal citations, footnotes omitted). As the ALJ has provided substantial evidence to support his decision, the undersigned recommends that it be upheld.

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion.

Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

January 28, 2010
Columbia, South Carolina